**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

RANDY A. MEYER,

                          CV 12-89-M-DLC-JCL

               Plaintiff,

     vs.

                          FINDINGS & RECOMMENDATION

MICHAEL J. ASTRUE,              OF UNITED STATES

Commissioner of Social Security,    MAGISTRATE JUDGE

               Defendant.

_____

     Plaintiff Randy Meyer brings this action under 42 U.S.C. § 405(g) seeking

judicial review of the decision of the Commissioner of Social Security denying his

application for disability insurance benefits under Title II of the Social Security

Act ("the Act"), 42 U.S.C. §§ 401-433.

     Meyer protectively filed his application for benefits on June 3, 2009,

alleging he became disabled on August 15, 2005 due to a back injury with leg and

toe numbness. Tr. 158, 162. Meyer's application was denied initially and on

reconsideration. Tr. 104-06, 111-12. After an administrative hearing at which

Meyer appeared with counsel, an Administrative Law Judge found that Meyer

was not disabled within the meaning of the Act. Tr.14-32. The Appeals Council

PAGE 1

denied Meyer's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 1-3. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Meyer was 48 years old at the time of his alleged onset date, and 54 years old at the time of the ALJ's decision.

## I.    Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.     Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at

1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears

the burden of establishing disability at steps one through four of this process.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ

will consider whether the claimant is engaged in "substantial gainful activity." 20

C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the

claimant has any impairments that qualify as "severe" under the regulations. 20

C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or

more severe impairments, the ALJ will compare those impairments to the

impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

Following the steps in the sequential evaluation process, the ALJ first found that Meyer met the insured status requirement of the Act through June 30, 2011, and had not engaged in substantial gainful activity since the August 15, 2005, alleged onset date. Tr. 16. The ALJ found at step two that Meyer had the following severe impairments: "degenerative disc disease of the lumbar spine, tinnitus, and status post left knee injury (mild chondromalacia of the medial facet of the patella)." Tr. 17. At step three, the ALJ determined that Meyer did not have an impairment or combination of impairments that met or medically equaled

any impairment described in the Listing of Impairments. Tr. 18. The ALJ also found that while Meyer's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [were] not credible" to the extent they were inconsistent with his residual functional capacity. Tr. 23.

The ALJ found at step four that Meyer could "perform his past relevant work as an invoice clerk as actually and generally performed in the national economy." Tr. 30. The ALJ made alternative findings at step five, concluding that Meyer could perform sedentary work as an order clerk, personnel clerk, or statement clerk. Tr. 31.

A.    Credibility

Meyer argues the ALJ did not provide sufficiently clear and convincing reasons for finding that his subjective testimony was not entirely credible.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). The *Cotton* test requires only that the claimant (1)

produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Meyer suffers from several severe impairments that can reasonably be expected to produce some degree of symptom, which means that Meyer has made a showing sufficient to meet both prongs of the *Cotton* test.

Meyer testified that he has periods of intense pain every day, does not fix

meals or do laundry, has difficulty concentrating, stays home "[f]or the most part" and rarely goes to town. Tr. 58-59, 62, 64. Meyer stated that even "[j]ust the slightest bit of stooping" exacerbates his "back and leg pain extremely bad," so his wife and son do all the shopping and cooking. Tr. 67, 77. He indicated that he will "try to go [to church] once a month," but has a "hard time sitting" and so does not attend regularly. Tr. 67. Meyer estimated that, on a typical day, he "can sit for 30 to 40 minutes" before he needs to lie down "for 15 minutes or so." Tr. 77 Meyer testified that he passes his days at home, taking pain medication, reading or getting on the internet, and lying down. Tr. 76-77.

The ALJ considered Meyer's subjective testimony, but ultimately found him less than entirely credible for a number of reasons. Tr. 19-29. To begin with, the ALJ found that Meyer's "activity level" and "level of functioning" were not consistent with his allegations of disabling pain and limitations. Tr. 29. As the ALJ noted, for example, Meyer reported to treating physician Dr. Thomas Jenko in June 2007 that he was taking a three-week trip to Germany and had experienced a burning sensation in his leg after "working all day." Tr. 24, 249. Meyer visited Dr. Dana Ducote in March 2008 after being "hit by a snowboarder" while skiing, and again in June 2008, at which time he reported increased pain after trying to clear and prepare 57 acres of land. Tr. 25, 251-52. A few months later, Dr.

Ducote described Meyer's "exercise tolerance [as] excellent," although a "10-mile hike he took the other day really caused left knee pain especially the downhill aspect." Tr. 253. Nonetheless, Dr. Ducote noted that Meyer was "able to work and do most recreational activities without excessive pain, although it is always there." Tr. 253. In October 2008, Meyer once again complained to Dr. Ducote of increased back pain, this time after "redoing the landscaping in his yard and working 8 to 10 hours at manual labor." Tr. 25, 254. The ALJ permissibly found the fact that Meyer reported traveling, skiing, hiking, and engaging in manual labor undermined his credibility to the extent he claimed his pain was so severe that he was essentially housebound, and unable to even go to church on a regular basis. Tr. 29.

The ALJ also discounted Meyer's testimony as to the extent of his pain and limitations in part based on his course of treatment, which the ALJ noted was "somewhat intermittent at times and conservative in nature." Tr. 29. As the observed when chronicling the medical records, Meyer often went for months between appointments. Tr. 24-25. And with the exception of those visits when Meyer reported having more pain due to his strenuous physical activities, he typically indicated that he felt "well," was "doing great" and had few complaints other than stable, chronic low back pain. Tr. 24, 244-258. The ALJ appropriately

cited the conservative course of Meyer's treatment as another reason for discounting his testimony as to the severity of his pain and limitations. *See e.g. Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment"); *Burch v Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

Finally, the ALJ discounted Meyer's testimony because it was not supported by the medical evidence of record. As the ALJ noted, for example, a lumbar spine MRI in January 2010 revealed mild to moderate abnormalities. Tr. 281. After reviewing those results and examining Meyer, treating orthopedist Dr. Erik Schroeder explained that although he did "not do formal disability evaluations," he "would guess, with [Meyer's] degenerative changes, he would easily do light duty and potentially medium duty work capabilities." Tr. 27, 281. The ALJ permissibly discounted Meyer's testimony as to the extent of his pain and limitations based in part on the fact that it was not supported by the objective medical evidence. While it would not have been proper for the ALJ to discount Meyer's testimony based solely on the lack of objective medical evidence, it was one appropriate factor for the ALJ to consider in his credibility analysis.

*Lingenfelter v.* Astrue, 504 F.3d 1028, 1040 (9ᵗʰ Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681 (9ᵗʰ Cir. 2005).

Reading the ALJ's decision as a whole, the Court is satisfied that the cited sufficiently clear and convincing reasons in support of his adverse credibility determination.

### B.    Lay Testimony

Meyer  next argues the ALJ did not cite germane reasons for discounting a lengthy written statement provided by his wife, Margaret Meyer.  Tr. 233-37.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)).  "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9ᵗʰ Cir. 1996). Nonetheless,"an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's]claims.'" *Molina v. Astrue*, 674 F.3d at

1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Ms. Meyer's written statement mirrored her husband's testimony in several respects. She wrote that Meyer "has gotten to where he has to be on pain medication just to get out of bed and eat breakfast, and explained that "[h]is days consist of sitting at the computer for awhile and then lying down for 15-20 minutes at a time every hour or so." Tr. 236-37. Ms. Meyer indicated that she does all the household chores, and they "stay home most of the time rather than go to church" because Meyer "can't sit there for any length of time" on the hard benches. Tr. 237. She reported that Meyer "has to lie down every hour or so to ease the burning in his back and leg," had difficulty sleeping, and a hard time concentrating. Tr. 237.

The ALJ summarized the contents of Ms. Meyer's statement in his written decision and gave it "some weight," but "determined that the credible medical evidence of record does not support the degree of limitation suggested by Mrs. Meyer." Tr. 20-21, 28. This was a sufficiently germane basis for discounting Ms. Meyer's statement.

Citing *Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009), Meyer argues it was improper for the ALJ to reject Ms. Meyer's statement on the ground that it was not supported by the medical evidence. The Ninth Circuit held in *Bruce* that it was

improper for the ALJ to discredit lay testimony "as not supported by the medical evidence in the record." *Bruce*, 557 F.3d at 1273. In earlier decisions, however, the Ninth Circuit has held that "one reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that "[t]he ALJ properly discounted lay testimony that conflicted with the available medical evidence."). That is what the ALJ did in this case – effectively discounting Ms. Meyer's statement not because there were no objective medical findings, but because her statement was contradicted by medical records showing that Meyer engaged in significant physical activities, was treated conservatively, and went for months without seeing his doctors during which time he reported his pain was controlled by medication.

Even assuming the ALJ did not provide sufficiently germane reasons for rejecting Ms. Meyer's statement, any error was harmless because that statement mirrored her husband's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Because the ALJ gave clear and convincing reasons for rejecting Meyer's subjective complaints, and Ms. Meyer's testimony largely reiterated those complaints, any error on the ALJ's part in failing to more specifically reject Ms. Meyer's testimony was harmless. *See Molina*, 674 F.3d at 1122; *Valentine v.*

*Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding rejection of family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's testimony).

C.    Medical Opinions

Meyer next argues the ALJ failed to cite sufficiently specific and legitimate reasons for rejecting a functional capacity questionnaire completed by one of his treating physicians, Dr Jenko, in August 2010.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(c)(2).  To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).   The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

PAGE 13

1989).

In answer to the questions on the form provided by Meyer's counsel, Dr. Jenko indicated by checkmark that Meyer's impairments would negatively impact his ability to obtain or sustain work activity, and would frequently prevent him from effectively paying attention or concentrating on the job.  Tr. 278-79.  Dr. Jenko wrote that Meyer had "no 'good days'", estimated that he would be absent from work more than four days per month, and indicated that he could not perform light or sedentary work on a sustained full-time basis.  Tr. 279.   In his only narrative sentence, Dr. Jenko wrote that Meyer "[c]ould perform light duty, sedentary employment only if able to lie down every hour or so for 15 min. to rest back."  Tr. 280.

The ALJ acknowledged Dr. Jenko's opinion, but gave it "no weight" because the "extreme limitations" he identified were not supported by his "own rather sparse treatment records."  Tr. 28.  When Dr. Jenko completed the questionnaire in August 2010, he had been Meyer's treating physician for four years.  Tr. 247-61; 272-77.  As the ALJ noted, however, Dr. Jenko had personally seen Meyer only five times during that four year period.  Tr. 28; 247-48; 272-75.  The ALJ also found it significant that Dr. Jenko had last seen Meyer in May 2010 – three months before he completed the functional capacity questionnaire – and

did not perform a physical examination.  Tr. 28, 272-73.  To the extent the ALJ

rejected the limitations set forth in Dr. Jenko's August 2010 opinion, he properly

cited the infrequent nature of Dr. Jenko's visits with Meyer as one basis for doing

so.  *See e.g. Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (where, as here, a

treating physician's opinion is contradicted by other evidence, the ALJ should

consider "the length of the treatment relationship and the frequency of

examination" in deciding what weight to give the opinion).

The ALJ also observed that Dr. Jenko's August 2010 opinion was not

supported by his contemporaneous treatment notes.   This too was a legitimate

basis for discounting his assessment.  As the ALJ noted elsewhere in his decision,

Dr. Jenko saw Meyer for the first time in August 2006, and then again in April

2007.  Dr. Jenko did not perform a physical examination during their first visit, but

confirmed based on his review of Meyer's medical records that Meyer had

degenerative lumbar disk disease and prescribed enough Lortab to last Meyer for

"about one year."  Tr. 247.   Dr. Jenko physically examined Meyer for the first

time during their second visit seven months later, at which time he wrote that

Meyer continued to have periodic sciatica, took Lortab daily, and "[o]verall has

had no worsening of his radiculopathy."  Tr. 247.  Dr. Jenko noted that Meyer

remained "very physically active" and in his final assessment wrote that Meyer

had a [n]ormal physical examination" and "[c]hronic low back pain, stable." Tr. 248. Dr. Jenko saw Meyer again in November 2009 and May 2010, again confirming that Meyer suffered from chronic back pain and adjusting his medications accordingly. Tr. 270-72. The ALJ reasonably found based on his review of these treatment notes that they did not support the severity of the limitations set forth on the functional capacity questionnaire Dr. Jenko completed in August 2010.

The ALJ also determined that Meyer's "acknowledged level of functioning" was inconsistent with Dr. Jenko's opinion. Tr. 28. As discussed above, there is evidence that Meyer remained active notwithstanding his chronic back pain, and engaged in activities like hiking, skiing, traveling, and manual labor. While those strenuous activities often exacerbated Meyer's pain, the ALJ permissibly found the fact that he persisted with those activities was not consistent with Dr. Jenko's opinion as to the severity of Meyer's limitations, including the need to lie down for 15 minutes every hour or so.

The ALJ thus provided sufficiently specific and legitimate reasons for discounting Dr. Jenko's August 2010 opinion in favor of those provided by the state agency reviewing physicians and Dr. Schroeder, an orthopedist who saw Meyer at least twice and believed him capable of light work. Tr. 262-70;281.

D.     Vocational Expert Testimony

Meyer maintains that the hypothetical the ALJ posed to the vocational

expert was flawed because it did not include all of the limitations to which he

testified, and did not include all of the limitations set forth in Dr. Jenko's August

2010 opinion.  But because the ALJ properly discredited Meyer's testimony and

discounted Dr. Jenko's opinion, he was not required to include those limitations in

the hypothetical.  *See  Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)

(the ALJ need not include limitations not supported by substantial evidence).

Meyer also contends the ALJ erred by not asking the vocational expert

about any possible conflicts between his testimony and the job descriptions set

forth in the Dictionary of Occupational Titles ("DOT").  SR 00-4p governs the use

of vocational expert evidence in disability determinations, and states that

"[o]ccupational evidence provided by a VE...generally should be consistent with

the occupational information supplied by the DOT."  SSR 00-4p, * 2.  If "there is

an apparent unresolved conflict between VE...evidence and the DOT," the ALJ

"must elicit a reasonable explanation for the conflict before relying on the VE"

testimony to support a disability determination.  SSR 00-4p, *2.

While Meyer maintains the ALJ did not comply with these requirements, the record shows otherwise.  As the vocational expert began his testimony, the ALJ made sure he understood "that if you give us an opinion that conflicts with the information in the DOT, that you need to advise us of the conflict and the basis for your opinion."  Tr. 86.  The vocational expert stated that he would do so.  Tr. 86. As his questioning ended, the ALJ specifically asked the vocational expert whether the testimony he had provided was consistent with the information found in the Dictionary of Occupational Titles.  Tr. 97.  The vocational expert responded that it was.  Tr. 97.   As the record thus reflects, the ALJ complied with the requirements of SSR 00-4p and Meyer's argument to the contrary is without merit.

To the extent Meyer maintains that the vocational expert's testimony regarding the availability of a sit/stand option in those jobs he identified conflicts with the DOT, he is mistaken.  The DOT does not address sit/stand options, and SSR 83-12 directs that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted."  SSR 83-12, *4.  That is what the ALJ did here.  In any event, the ALJ specifically asked the vocational expert whether his testimony was consistent with the information found in the DOT "specifically with regard to the sit/stand option and sustainability."  Tr. 97.  The vocational expert confirmed that it was.  Tr. 97.

E.    Past Relevant Work

Meyer argues the ALJ erred by finding him capable of performing past relevant work as an invoice clerk.  Specifically, he argues the ALJ erred by characterizing his past relevant work as that of an "invoice clerk" when in fact that was just one small component of his job as a construction company owner.   Citing *Valencia v. Heckler,* 751 F.2d 1082, 1086 (9th Cir. 1985), Meyer argues it was error for the ALJ to classify his former occupation according to its least demanding functions.

Even assuming, without deciding, that Meyer is correct, any error on the ALJ's part at step four can only be considered harmless because the ALJ made alternative findings at step five.  The ALJ concluded based on the vocational expert's testimony that Meyer could perform sedentary work as an order clerk, personnel clerk, or statement clerk.  Tr. 31.  The ALJ's step five analysis is supported by substantial evidence.

F.    Medical Vocational Guidelines

Meyer points out that by the time the Appeals Council denied his request for review of the ALJ's decision, he had reached the age of 55, which made him a "person of advanced age" for purposes of applying the Medical Vocational

Guidelines ("grids"). Had he been considered a person of advanced age, Meyer argues the applicable grid would have directed a finding of disabled.

When the Appeals Council denied Meyer's request for review, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210. In such a case, the date of the ALJ's decision is the relevant date for purposes of identifying the claimant's age category and applicable grid rule. *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir. 1988). At the time of the ALJ's decision on November 17, 2012, Meyer was 54 years and two months old, which placed him in the "closely approaching advanced age" category. 20 C.F.R. § 404.1563(d). The ALJ correctly categorized Meyer as a person closely approaching advanced age and applied the grid rules accordingly. Tr. 30-31.

To the extent Meyer argues his was "borderline" case, he is mistaken. The regulations state that the grids' age categories will not be applied "mechanically in a borderline situation." 20 C.F.R. § 404.1563(a). If the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant] is disabled, [the Commissioner] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R.

§§ 404.1563(d).  Because Meyer was still ten months shy of his 55th birthday at the time of the ALJ's decision, his was not a "borderline" case.  *See Russell*, 856 F.2d at 84 (not a borderline case where the claimant was seven months short of reaching the next age category).  The ALJ properly considered Meyer as a person closely approaching advanced age when making his decision.

**IV.  Conclusion**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error.  Therefore,

IT IS RECOMMENDED that Meyer's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's decision be affirmed.

DATED this 22nd day of February, 2013

Jeremiah C. Lynch
United States Magistrate Judge